**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **BLANK ROME LLP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No: 15-cv-1200-RCL** |
| | ) | |
| **DEPARTMENT OF THE AIR FORCE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

This case concerns a Freedom of Information Act ("FOIA") request sent by plaintiff, Blank Rome LLP, to defendant, Department of the Air Force on March 25, 2014. Plaintiff challenges the sufficiency of defendant's response to its request. Defendant has moved to dismiss, or, in the alternative, for summary judgment. Plaintiff opposes defendant's motion and has cross moved for partial summary judgment. For the reasons stated below, defendant's motion to dismiss is granted as to Count II of plaintiff's Complaint. Defendant's motion for summary judgment is granted as to the adequacy of the search, and plaintiff's cross motion for summary judgment. As to the propriety of Exemption 5, defendant's motion for summary judgment is granted in part and denied in part, and plaintiff's cross-motion for summary judgment is granted in part and denied in part.

## II.    BACKGROUND

The FOIA request at issue in this case centers around a termination for convenience of a utility contract at Fort Monroe, Virginia. In 2004, the Defense Energy Support Center and Dominion Virginia Power ("DVP") signed a 50-year utility privatization contract for Fort Eustis, Fort Story, and Fort Monroe, three Army bases in Virginia. Pl.'s Response to Def.'s Statement of

Facts ¶ 4, ECF No. 20-1.  As part of a base closure and realignment action, Fort Monroe was scheduled to close on September 15, 2011.  *Id.* ¶ 5.  The Air Force 633d Contracting Squadron ("CONS") subsequently submitted a notice of partial termination for convenience to DVP for Contract Line Item 0007 ("CLIN0007").  *Id.* ¶ 7.  On March 25, 2014, plaintiff submitted a FOIA request to the Air Force seeking ten categories of records dated or created between January 1, 2009 and March 25, 2014.  *Id.* ¶¶ 1, 3.  All of the listed categories of documents sought are communications related to the termination of CLIN0007.  *Id.* ¶ 3.

After plaintiff submitted its request, Timothy A. Lyon—Air Force Base Records, FOIA, and Privacy Act Manager for Joint Base Langley Eustis ("JBLE")—forwarded the request to Technical Sergeant Bradley Benedictus to perform the search for responsive records.  First Benedictus Decl. ¶ 5, ECF No. 17-1.  TSgt. Benedictus worked as a contract administrator at the 633d CONS at JBLE and, as such, was responsible for administering the contract at issue from January 2012 through December 2014.  *Id.* ¶ 1.  With the exception of email records, the 633d CONS at JBLE held all records responsive to the FOIA request; if any records were generated in different sections of the Air Force, they were provided to the 633d CONS.  Second Benedictus Decl. ¶ 3, ECF No. 22-1.  As the contract administrator, TSgt. Benedictus was most familiar with the termination of CLIN0007 and was included on all or virtually all email communications regarding the termination of CLIN0007.  First Benedictus Decl. ¶ 5.  TSgt. Benedictus reviewed the request, which specified ten categories of information, but did not read it to be limited to those ten categories.  Second Benedictus Decl. ¶ 2.  Accordingly, he searched for all records that would fall within the ten categories, as well as other records regarding the termination of CLIN0007.  *Id.*

TSgt. Benedictus conducted the following searches for documents responsive to the FOIA request: 1) TSgt. Benedictus pulled all responsive documents related to CLIN0007 from the 633d

CONS's hard copy records; 2) TSgt. Benedictus copied all documents related to CLIN0007 from the 633d CONS's shared drive; 3) TSgt. Benedictus conducted a search of his active electronic mail and personal storage email file.  First Benedictus Decl. ¶ 6.  Regarding the email search specifically, TSgt. Benedictus stored all emails related to the termination of CLIN0007 in a separate folder, and copied all of those emails as responsive.  *Id.* ¶ 9.  He also searched through his uncategorized emails in search of any related to the termination of CLIN0007.  *Id.*  He additionally reviewed emails from the former contract administrator, SSgt. Andrew Smith.  *Id.* ¶ 6.

Meanwhile, the parties exchanged several communications regarding plaintiff's FOIA request in which plaintiff raised concerns over defendant's delay and failure to produce responsive documents.  Compl. ¶ 17–24, ECF No. 1.  After not receiving a satisfactory answer or any production of documents, plaintiff, on July 28, 2014, filed its first administrative appeal for constructive denial and arbitrary and capricious action to withhold records.  *Id.* ¶ 25.  In the fall of 2014, after several more communications between the parties, the Air Force released to plaintiff eighty-two responsive documents, along with a List of Denied Records and a Release Letter, and withheld all other responsive documents under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), claiming deliberative process privilege or attorney-client privilege.  *See id.* ¶¶ 26–30, First Lyon Decl. ¶ 3, ECF No. 17-2.  Plaintiff complained that the production was deficient and on January 26, 2015, filed its second administrative appeal arguing that the search was inadequate and that Exemption 5 was inapplicable.  Compl. ¶¶ 32–40.  After several more communications between the parties regarding the processing of the second appeal, plaintiff filed the instant lawsuit on July 24, 2015.  *Id.* ¶¶ 41–47.

After plaintiff filed this lawsuit, the Air Force expanded its search to include documents held by Air Force members besides TSgt. Benedictus who worked on the CLIN0007 termination

settlement negotiations.  First Lyon Decl. ¶ 4.  TSgt. Benedictus provided the following names of those Air Force employees who provided input on the CLIN0007 termination negotiations to Captain David Mitchell at the Air Force Legal Operations Agency: 1) Colonel Christopher Wegner, 2) Rosita Goodrum, 3) Stacy Ellingsen, 4) Margaret Patterson, 5) Thomas White, and 6) Elijah Horner.  First Benedictus Decl. ¶ 10.  Captain Mitchell requested that each of the six listed individuals search their email for responsive records using the search terms "Dominion," "DVP," "CLIN 0007," "SP0600-04-C-8253," "Virginia Power," "termination," and "Fort Monroe."  First Lyon Decl. ¶ 5.  Colonel Wegner did not find any responsive documents, Ms. Goodrum found two responsive documents, and Ms. Patterson found eight responsive documents.  *Id.*  Ms. Ellingsen and Mr. Horner were no longer Air Force employees and did not have access to their Air Force email accounts.  *Id.*  Mr. White was also no longer an Air Force employee and could not be located.  *Id.*  Accordingly, on December 15, 2015, Captain Mitchell requested that the Air Force Cyber Operations Center conduct a search for the stored emails of Colonel Wegner, Ms. Ellingsen, Mr. Horner, and Mr. White.  *Id.* ¶ 6.  An account and electronic mailbox for Colonel Wegner could be restored only as of July 14, 2015, outside the date range of plaintiff's FOIA request.  *Id.*  There were no accounts or electronic mailboxes available for Ms. Ellingsen and Mr. White, and although there was an account for Mr. Horner, there was no electronic mailbox.  *Id.*  Thus, the Air Force was unable to find responsive documents from these four accounts.  Additionally, after determining that responsive documents may have existed in the Department of the Army, the Defense Contract Audit Agency ("DCAA"), and the Government Accountability Office ("GAO"), the Air Force referred plaintiff's FOIA request to these organizations on November 10, 2015.  *Id.* ¶ 10.

On November 18, 2015, after reviewing the documents previously withheld, the Air Force released an additional 177 documents in full, and produced 25 documents partially redacted under Exemption 5. *Id.* ¶ 7. On November 20, 2015 the Air Force produced two emails from Ms. Goodrum, which were partially redacted, and on December 16, 2015 the Air Force produced eight emails from Ms. Patterson, three of which were partially redacted. *Id.* ¶ 8. Defendant also produced a *Vaughn* Index, which accompanied the first Benedictus and Lyon declarations and its Motion to Dismiss/Motion for Summary Judgment, and listed thirty documents that it had redacted under Exemption 5. *See Vaughn* Index, ECF No. 17-1. Defendant claimed that the deliberative process privilege or the attorney-client privilege applied to the redactions. *See id.* In early 2016, after TSgt. Benedictus conducted a second review of the documents withheld or redacted under Exemption 5, the Air Force released *Vaughn* Index Items 2, 24, and 30, and released the first redaction in Item 1. Second Benedictus Decl. ¶ 7. On March 3, 2016, the Air Force produced *Vaughn* Index Items 20–23. Third Benedictus Decl. ¶ 2, ECF. No. 30-1.

Then, on April 15, 2016, the Air Force produced a Rule 4 File in ASBCA No. 60383, an appeal of a Contracting Officer's Final Decision arising out the termination of CLIN0007. Pl.'s Supp. Br. In Opp'n 3, ECF No. 29. Although plaintiff's FOIA request sought some of the same documents produced in the Rule 4 File, the Rule 4 File contained documents within the FOIA request's specifications that were not produced or listed on defendant's *Vaughn* Index. *Id.* On June 3, 2016 the Air Force sent plaintiff 128 documents responsive to the FOIA request which were produced in the Rule 4 filing, most of which had previously been released in prior productions. Third Benedictus Decl. ¶ 3. Finally, on June 15, 2016, the Air Force released to plaintiff *Vaughn* Index Items 1, 4–19, 25, 26, and 29. *Id.* ¶ 4. Thus, the only *Vaughn* Index Items currently withheld by the Air Force under Exemption 5 are Items 3, 27, and 28. *Id.* In addition,

the Air Force has refused to produce a DCAA Audit Report from September 30, 2015, claiming it is as outside the date range of plaintiff's request.  Pl.'s Reply Br. 5, ECF No. 26.

On December 23, 2015, defendant filed a motion to dismiss, or in the alternative, motion for summary judgment, arguing that it fulfilled its obligations under FOIA and properly withheld information under Exemption 5.  Def.'s Mot. to Dismiss 3, ECF No. 17.  Plaintiff subsequently cross-moved for partial summary judgment and asked the Court to conduct an *in camera* review of the redacted documents, order the Air Force to produce the unredacted copies, and order the Air Force to complete the required search and production.  Pl.'s Opp'n to Def.'s Mot. to Dismiss 2, ECF No. 20.

## III.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(a).  It is "appropriate only in circumstances where 'the evidence is such that a reasonable jury could not return a verdict for the nonmoving party.'"  *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The Court must view all evidence "in the light most favorable to the nonmoving party" and, if a genuine dispute exists, "then parties should be given the opportunity to present direct evidence and cross-examine the evidence of their opponents in an adversarial setting."  *Id.*  These standards apply to FOIA actions.  *Id.*; *Nat'l Sec. Counselors v. C.I.A.*, 960 F. Supp. 2d 101, 133 (D.D.C. 2013) ("FOIA cases typically and appropriately are decided on motions for summary judgment." (internal quotation marks omitted)).

### B.      Adequacy of a Search

When an agency receives a FOIA request it is obligated to "conduct a search reasonably calculated to uncover all relevant documents." *Truitt v. Dep't of State*, 897 F.2d 540, 541 (D.C. Cir. 1990) (internal quotation marks omitted).  To determine whether a search was adequate, courts consider "a standard of reasonableness" asking "*not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Id.* (internal quotation marks omitted).  Thus, an agency "must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  An agency need not, however, "search every record system," or conduct a perfect search.  *See id.*; *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

At the summary judgment stage, the agency bears the burden of showing that it complied with FOIA and it may meet this burden "by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched.'" *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003).  Courts may rely on these declarations to grant summary judgment, *see Morley v. C.I.A.*, 508 F.3d 1108, 1116 (D.C. Cir. 2007), but they must be must be "relatively detailed and non-conclusory," *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (quoting *SafeCard*, 926 F.2d at 1200).  The plaintiff may then "provide 'countervailing evidence' as to the adequacy of the agency's search." *Iturralde*, 315 F.3d at 314.  However, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"

*SafeCard*, 926 F.2d at 1200.  They may, however, be rebutted by evidence of bad faith.  *Id.*  In addition, summary judgment is not appropriate when "a review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials.'"  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Founding Church of Scientology v. Nat'l. Sec. Agency*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

### C.      Deliberative Process Privilege

An agency claiming an exemption to FOIA bears the burden of establishing that the exemption applies.  *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 352 (1979).  An agency satisfies that burden by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (internal quotation marks omitted).   FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C.A. § 552(b).  District Courts have a duty to consider the issue of segregability, even if not raised by the parties.  *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

FOIA Exemption 5, which encompasses the deliberative process privilege, applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions."  *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).  Three policy bases underlie this privilege:

> First, it protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions.  Second, it

protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon. And third, it protects the integrity of the decision-making process itself by confirming that "officials should be judged by what they decided(,) not for matters they considered before making up their minds."

*Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772–73 (D.C. Cir. 1978)). Therefore, Exemption 5 "protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Id.* at 1048.

In order for material to qualify for withholding or redaction under Exemption 5, it "must be both 'predecisional' and part of the 'deliberative process.'" *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011) (internal quotation marks omitted). A document is predecisional if it is "prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1122 (D.C. Cir. 1989) (internal citations and quotation marks omitted). To qualify a document as predecisional, "a court must be able 'to pinpoint an agency decision or policy to which the document contributed.'" *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987). A predecisional document may lose its status if it is later adopted as an agency position. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is part of the deliberative process "if the disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Formaldehyde Inst.*, 889 F.2d at 1122 (internal quotation marks omitted). In addition,

"[f]actual material is not protected under the deliberative process privilege unless it is 'inextricably intertwined' with the deliberative material." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 372 (D.C. Cir. 2005).

Exemption 5 may shield draft documents from disclosure. *See Coastal States Gas Corp.*, 617 F.2d at 866; *Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983) ("Draft documents, by their very nature, are typically predecisional and deliberative.").   However, "[a]lthough an agency may properly withhold drafts pursuant to Exemption 5, the defendants' designation of a document as a 'draft' does not automatically trigger proper withholding under Exemption 5." *Defs. Of Wildlife v. U.S. Dep't of Agric.*, 311 F. Supp.2d 44, 58 (D.D.C. 2004). The agency must still show that the document is both predecisional and deliberative. *Id.*

## IV.   ANALYSIS

### A.   Adequacy of the Search

#### 1.   *Defendant has met its burden of showing that it conducted an adequate search for responsive documents*

Based on the declarations submitted by TSgt. Benedictus and Mr. Lyon, the Court concludes that the Air Force has met its burden of showing that it conducted a reasonable search and fulfilled its obligations under FOIA.   The declarations are detailed and non-conclusory regarding the search undertaken by defendant in response to plaintiff's FOIA request.   TSgt. Benedictus' declarations establish that the 633d CONS at JBLE was the location most likely to hold responsive documents.   TSgt. Benedictus declared, "[a]s the office servicing the Contract and handling the termination negotiations for CLIN0007, the 633d CONS holds all of the contract administration records responsive to the FOIA request and is included on all email correspondence."   First Benedictus Decl. ¶ 4.   If any records were generated in other sections of the Air Force for the benefit of the 633d CONS, they were provided to the 633d CONS.   Second

Benedictus Decl. ¶3.  They also establish that TSgt. Benedictus was the individual most familiar with the termination of CLIN0007.  TSgt. Benedictus declared, "I administered the contract from January 2012 thru December 2014 and was the most familiar with the termination negotiations and processing for CLIN0007 of the Contract.  I also was the primary recipient, sender, or carbon copied on all email communications about the same.  I furthermore was present for all meetings discussing the termination of CLIN0007."  First Benedictus Decl. ¶ 5.  Therefore, the search was properly limited to the place most likely to contain responsive documents.  *See Defs. Of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 10 (D.D.C. 2004) (rejecting the plaintiff's argument that the search was inadequate because the files of only three individuals were searched because the defendant's declarations established that "there was no reason to believe that responsive materials would be located anywhere but in the files of the three named individuals"); *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 34 (D.D.C. 2002) (RCL), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003) (finding the search adequate because "the FBI searched for ticklers in places that the FBI believed were most likely to contain responsive ticklers").

    In addition, the declarations detail three searches undertaken by TSgt. Benedictus—a hard copy search, a shared drive search, and an "exhaustive" email search—as well as the parameters of the search, *i.e.*, anything related to the termination of CLIN0007.  First Benedictus Decl. ¶¶ 6– 9; Second Benedictus Decl. ¶ 2.  Furthermore, TSgt. Benedictus provided the names of all other Air Force members likely to have responsive email communications to the Air Force FOIA manager, Mr. Lyon.  First Benedictus Decl. ¶ 10.  Defendant then conducted a search of the those individuals' email accounts using specific search terms related to the termination of CLIN0007 as well as to Virginia Power and Fort Monroe generally, and conducted a search of the stored email communications for those individuals no longer employed by the Air Force.  First Lyon Decl.

¶¶ 4–6.  Finally, after determining that responsive documents may have existed in the control of other agencies, defendant referred plaintiff's request to the appropriate agencies.  First Lyon Decl. ¶ 10.  Regarding the search generally, TSgt. Benedictus declared that the "[t]he 633d CONS and the additional email accounts of the Air Force employees that I provided are all of the locations where records responsive to the FOIA request could exist."  Second Benedictus Decl. ¶ 3.  Mr. Lyon declared that "[t]he search conducted was reasonably calculated to uncover all responsive documents."  First Lyon Decl. ¶ 11.

The Court concludes that defendant has met its burden of showing that it complied with FOIA by "by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched." *Iturralde*, 315 F.3d at 312; *see also Elec. Privacy Info. Ctr. v. Dep't of Justice Criminal Div.*, 82 F. Supp. 3d 307, 317 (D.D.C. 2015) (finding that the FBI's search was adequate when it used the key term "WikiLeaks" to search its central records system and then used those results to locate case agents with potentially responsive material); *Sanders v. Obama*, 729 F. Supp. 2d 148, 156 (D.D.C. 2010) (finding the search adequate when the FOIA liaison for the USAO searched the electronic database with keywords related to the FOIA request, searched the physical file likely to contain responsive documents, and "declared that she searched everywhere it was likely that responsive records would exist and that there were no other logical places for her to search").  Thus, it falls to plaintiff to provide countervailing evidence as to the adequacy of the search.  *See Iturralde*, 315 F.3d at 314

### 2. *Plaintiff has failed to provide sufficient evidence showing that defendant's search was inadequate*

Plaintiff's arguments that the search was inadequate are unavailing.  Plaintiff argues that the search was inadequate for the following reasons: 1) defendant failed to search for and/or

uncover several categories of documents and subsequently found several documents which should have originally been produced; 2) defendant improperly delayed in referring plaintiff's request to other agencies and in producing responsive documents; and 3) defendant failed to search the records of several dozen Air Force employees involved in the termination of CLIN0007.   The Court takes each of these arguments in turn and finds that none establish that defendant's search was inadequate.

a.      *Failure to search for and/or produce responsive documents*

Plaintiff argues in large part that defendant's search was inadequate due to the existence of—or claimed existence of—other responsive documents not produced.   Originally, plaintiff claimed that the Air Force failed to search for four of the ten categories of information contained in the request—records submitted to the Base Adjustment and Realignment Commission ("BRAC"), DCAA audit reports concerning the termination of CLIN0007, records provided to the GAO, and records provided to Congress.   Pl.'s Opp'n to Def.'s Mot. to Dismiss 9.   After the subsequent Rule 4 File release, plaintiff pointed to the fact that several documents released as part of the Rule 4 File should have been released as responsive to its FOIA request, and argued that this was evidence of a genuine dispute of material fact regarding the adequacy of the search and was an admission that defendant's prior FOIA productions were incomplete.   Pl.'s Supp. Br. In Opp'n 4.   Both of these arguments fail.

If the adequacy of a search is challenged, the court must ask whether "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant."   *SafeCard*, 926 F.2d at 1201.   Uncovering additional responsive documents does not render the original search inadequate.   *See Hodge v. F.B.I.*, 703 F.3d 575, 579–80 (D.C. Cir. 2013).   "[T]he adequacy of a FOIA search is generally determined not by the

fruits of the search, but by the appropriateness of the methods used to carry out the search."
*Iturralde*, 315 F.3d at 315.   If an agency fulfills its obligation to conduct searches reasonably
calculated to uncover all relevant documents, the question is "whether the requester can identify
any additional searches that must be conducted."   *Hodge*, 703 F.3d at 580.   However, "[m]ere
speculation that as yet uncovered documents may exist does not undermine the finding that the
agency conducted a reasonable search for them."   *SafeCard*, 926 F.2d at 1201.

### i.   *Failure to search for four categories of documents*

Considering plaintiff's argument regarding the four categories allegedly not searched, the
Court first finds that plaintiff's argument that defendant's declarations fail to describe a search for
documents responding to the four categories does not have merit.   As already described, TSgt.
Benedictus read the request to cover all documents related to the termination of CLIN0007.
Second Benedictus Decl. ¶ 2.   This encompasses each of the four categories at issue.   The search
was reasonably calculated to uncover relevant documents, even if defendant's declarations did not
specifically address the four categories.

Plaintiff infers that because certain presumably responsive documents to the four categories
exist elsewhere, others must also exist that defendant did not search for.   Specifically, it cites a
document available on DOD's BRAC website regarding the costs of the BRAC at Fort Monroe,
Pl.'s Opp'n to Def.'s Mot. to Dismiss 10, two DCAA audit reports, *id.* at 10–11, Pl.'s Reply Br. 7,
a 2013 GAO report that noted the termination cost for Fort Monroe, and an email produced by
defendant in response to the FOIA request confirming that defendant prepared documents for the
GAO Report, Pl.'s Opp'n to Def.'s Mot. to Dismiss 11.   From these, plaintiff concludes that other
responsive documents must exist and that defendant failed to search for them.   *Id.* at 10.

The Court finds, however, that plaintiff is merely speculating that such documents currently exist and are within the possession of the Air Force. It is well-established that speculation is not enough to undermine a finding that an agency conducted a reasonable search. *SafeCard*, 926 F.2d at 1201. In *Light v. Department of Justice*, the plaintiff rested its claim that responsive documents must have existed within FBI's control that it failed to release on the existence of an email relating to the subject matter of the FOIA request. *Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 25 (D.D.C. 2013). And, in *Schoenman v. F.B.I.*, the plaintiff claimed that other documents must have existed to generate a document included on the defendant's *Vaughn* Index. *Schoenman v. F.B.I.*, 573 F. Supp. 2d 119, 138 (D.D.C. 2008). In both of these cases, the courts found that the plaintiffs were merely speculating regarding the existence of uncovered documents and rejected the plaintiffs' arguments. *See Light*, 968 F. Supp. 2d at 25–26; *Schoenman*, 573 F. Supp. 2d at 138. Here also, plaintiff is merely speculating that other documents must exist within the Air Force's control. TSgt. Benedictus declared that he searched for all documents related to the termination of CLIN0007 and that he provided "all of the locations where records responsive to the FOIA request could exist." Second Benedictus Decl. ¶ 3. Mr. Lyon declared that "any other documents that Blank Rome is expecting to find do not exist or are maintained at other agencies, not the Department of the Air Force." Second Lyon Decl. ¶ 5. TSgt. Benedictus' and Mr. Lyon's declarations "are presumed to be in good faith, and they are not rebutted by speculative claims that other responsive documents exist." *Light*, 968 F. Supp. 2d at 25–26.

Moreover, plaintiff appears to be seeking documents that may be in the possession of the four agencies named, not the Air Force. The Air Force, as the recipient of the FOIA request, was under an obligation to search its own records or records in its possession for responsive documents.

It was under no obligation to search for documents within the custody of other agencies.  If plaintiff seeks records in the possession of other agencies, its remedy lies with them.

     *ii.*  *Failure to produce documents released in Rule 4 File*

   Next, the Court finds that defendant's search was not rendered inadequate due to its failure to uncover documents later released as part of the Rule 4 File.  If an agency uncovers previously unreleased responsive documents, and then releases them, the search is not deemed inadequate.  *See Hodge*, 703 F.3d at 579–80.  In *Hodge v. F.B.I.*, the FBI uncovered 6,000 pages of potentially responsive materials after the plaintiff filed suit, and released 1,762 pages to the plaintiff.  *Id.* at 579.  Although the plaintiff claimed that the FBI must have therefore possessed additional responsive documents, he failed to "identif[y] any specific additional searches that he believes the FBI should have conducted," and "offer[ed] no basis for concluding that those documents might exist."  *Id.*  Similarly here, after defendant discovered the missing documents, it released them to plaintiff.  *See* Third Lyon Decl. ¶ 3 ("I released all of the documents, including duplicate documents.").  Plaintiff has not identified additional locations that defendant should have searched or searches that it should have conducted to uncover the missing documents.  It merely claims that the existence of the responsive documents not produced raises a genuine dispute regarding the adequacy of the search, and assumes that TSgt. Benedictus intentionally omitted responsive documents from defendant's previous productions.  *See* Pl.'s Supp. Br. In Opp'n 3–4.  TSgt. Benedictus submitted a sworn declaration that he "did not intentionally withhold any releasable responsive documents from Blank Rome or our FOIA Office for this case."  Third Benedictus Decl. ¶ 5.  Plaintiff has submitted no evidence—other than its own assertions—that convinces the court that this statement is untrue.

b.      *Defendant's referral and production delays*

Next, plaintiff takes issue with the timing of the Air Force's referral letters to other agencies with potentially responsive documents, which were sent in late 2015, and with the fact that the Air Force failed to produce documents held by the recipients of these letters.  Pl.'s Opp'n to Def.'s Mot. to Dismiss 12–14; Pl.'s Reply Br. at 5.[1]  Plaintiff also argues that the adequacy of defendant's response to its request is called into serious question by defendant's substantial delays generally. Pl.'s Reply Br. at 8–10.

First, plaintiff's argument that defendant failed to produce documents held by the agencies that received the referral letters is fruitless.  Courts may order an agency to produce "agency records."  5 U.S.C. § 552(a)(4)(B).  The Supreme Court has held that materials are only "agency records" if 1) an agency created or obtained the materials, and 2) the agency was "in control of the requested materials at the time the FOIA request is made."  *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989).  In addition, an agency is not "required to recreate or to reacquire a document that it no longer has."  *SafeCard*, 926 F.2d at 1201.  As Mr. Lyon declared, "[w]hen we refer a FOIA request to another agency because there is a possibility that another agency may have responsive records, the agency to which we refer the FOIA request, responds directly to the requester."  Second Lyon Decl. ¶ 3.  If plaintiff seeks records in the control of other agencies, it should send FOIA requests to those agencies.

---

[1] As evidence of an inadequate search, plaintiff also argues that defendant, in its referral letters to other agencies, assigned a new case number to plaintiff's request so it would appear that the request was new, and had not been pending for twenty months.  Pl.'s Opp'n to Def.'s Mot. to Dismiss 13.  Plaintiff also states that defendant omitted one of the categories of the FOIA request in the transmittal letter to the other agencies.  *Id.*  Defendant has explained, however, that the case number used in the referral letters was the appeal case number assigned to plaintiff's request, which occurs when a requester submits an administrative appeal as plaintiff did.  Second Lyon Decl. ¶ 9.  In addition, defendant declared that the omission of a category in the referral letters was an administrative oversight. *Id.* ¶ 5.  When defendant referred the request to the other agencies, it sent an electronic copy of the request.  *Id.* ¶ 3.  The Court therefore finds that plaintiff's arguments do not raise a genuine dispute as to the adequacy of defendant's search.

Regarding defendant's delay, the Court agrees with plaintiff that defendant appears to have taken an undue amount of time to respond fully to plaintiff's FOIA request.  It has offered no explanation for why it waited over a year and a half to refer plaintiff's request to these other agencies, nor does it offer an explanation for the production delays generally.  Nonetheless, the fact of delay is not enough to cast sufficient doubt on the reasonableness of the search; "the timing of a search is irrelevant, so long as an adequate search has been conducted and all redactions from responsive documents are justified."  *Nance v. F.B.I.*, 845 F. Supp. 2d 197, 202 (D.D.C. 2012); *see also Iturralde*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[I]nitial delays in responding to a FOIA request are rarely, if ever, grounds for discrediting later affidavits by the agency."); *Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 59, 62 (D.D.C. 2003) ("When exactly a reasonable search was conducted is irrelevant.").  The issue remains whether the search, whenever conducted, was "reasonably calculated to uncover all relevant documents."  *Truitt*, 897 F.2d at 541.  In *Nance v. F.B.I.*, the court found that "[i]f the FBI demonstrates that it conducted an adequate search with proper redactions at some point prior to filing for summary judgment, Nance's distinction between pre-suit and post-suit searches becomes irrelevant."  *Nance*, 845 F. Supp. 2d at 202.  Here, because defendant has demonstrated that it conducted a reasonable search and produced responsive documents, it is irrelevant that it delayed in referring the search to other agencies and in producing documents.  Thus, although the Court is sympathetic to plaintiff's frustration, it does not find that the delays render the search itself unreasonable.

> c. *Failure to search records of individuals involved in CLIN0007 termination*

Finally, plaintiff asserts that Air Force should have conducted searches of the records of fifty three Air Force employees it claims were involved with the Air Force's consideration of DVP's termination settlement proposal, twenty-three of whom it deems "key participants."  Pl.'s

Reply Br. 4–5.  Plaintiff has not, however, explained why these individuals should be considered key participants, nor has it even explained the role that these individuals played in the contract settlement negotiation.  Defendant has, in contrast, declared that these individuals played only "minor, insignificant roles, if any role at all, in the termination of CLIN0007."  Third Benedictus Decl. ¶ 3.  As previously described, TSgt. Benedictus declared that the individuals with key involvement included himself and six others.  Defendant conducted searches of those individuals' email accounts—where available—and produced responsive documents from those accounts to plaintiff.  As plaintiff has not offered evidence to the contrary, the Court has no reason to doubt defendant's declarations.  *See SafeCard*, 926 F.2d at 1200.  It appears that plaintiff is asking the Court to order defendant to conduct a perfect search, "[a]nd adequacy—not perfection—is the standard that FOIA sets." *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015).  The Court, relying on defendant's declarations which have not been sufficiently rebutted by plaintiff, sees no compelling reason to force defendant to conduct an additional fifty-three searches.

## B.     Deliberative Process Privilege

Although defendant initially listed thirty documents on its *Vaughn* Index for which it claimed the deliberative process privilege of Exemption 5 applied, only three remain in dispute.  All others have been released to plaintiff, *see* Third Lyon Decl. ¶¶ 2–4, and the parties' arguments regarding the propriety of Exemption 5 as to those documents are therefore moot.  *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).  The documents that remain contested are *Vaughn* Index Items Nos. 3, 27, and 28.  Each of these documents are draft letters to DVP regarding the Fort Monroe termination settlement proposal.  The final memorandum letter was released on March 7, 2014.  Defendant claims that the redacted information is information not included in the final memorandum submitted to DVP.  With respect to these documents, defendant states,

> The information included in the final drafts represents the official communications
> of the agency on the matters contained therein. The contracting officer who signed
> the final memoranda provided to DVP specifically rejected the inclusion of the
> withheld information from the final memoranda. Air Force members and
> representatives working on the termination of CLIN0007, in editing drafts to
> produce the final memoranda, engaged in a process of give and take where ideas
> were proposed, debated, considered and ultimately included or rejected in the final
> draft. Releasing information not included in the final drafts [would] chill open and
> honest communications within the agency.  The information redacted from these
> documents is the minimum amount necessary to ensure open, frank and thoughtful
> agency deliberations.

Second Benedictus Decl. ¶ 8.  Plaintiff argues that designating a document as "draft" does

not protect it from disclosure and that defendant must show how each redaction "relates to

the deliberative, decision-making process with respect to terminating CLIN0007, and that

they do not contain any purely factual information that must be disclosed."  Pl.'s Reply Br.

17–18, 22–23.

The Court, at plaintiff's request, has reviewed Items 3 and 27 *in camera*.  After this

*in camera* review, the Court concludes that three of the redactions were improper under

Exemption 5, but that all others were proper.  Therefore, the Court grants in part and denies

in part defendant's motion for summary judgment as to the propriety of Exemption 5, and

grants in part and denies in part plaintiff's motion for summary judgment.

### 1.     *Improper Redactions*

The Court first finds that redaction 6 in *Vaughn* Index Item 3 (January 30, 2014 draft) and

redactions 7 and 8 in *Vaughn* Index Item 27 (August 5, 2013 draft) were improper.  Redaction 6

is the first redaction on page three of *Vaughn* Index Item 3 and is number (4) in the list beginning

on page two.  Redaction 7 is the last redaction on page two of *Vaughn* Index Item 27 and is number

(4) in the list beginning on page two.  Redaction 8 is the first redaction on page three of *Vaughn*

Index Item 27.  It is the sentence immediately preceding "Future costs and costs incurred after 15

September are unallowable."

After an *in camera* review, the Court finds that the redacted material is identical to material released in the final memorandum.  The Court concludes that these redactions do not qualify as predecisional.  Although they were generated before the Air Force's final decision regarding the Fort Monroe termination settlement proposal, which was released March 7, 2014, and were therefore predecisional at that time, the material in these redactions lost their predecisional status when they were adopted in the Air Force's final memorandum.  *See Coastal States Gas Corp.*, 617 F.2d at 865.

The Court finds that there is no danger of chilling agency debate and discussion in this case where the redacted material at issue has fully survived the drafting process and has been released to the public.  *Cf. Afshar v. Dep't of State*, 702 F.2d 1125, 1142 (D.C. Cir. 1983) ("To the extent the reasoning of the [predecisional] recommendations is expressly adopted [in final, nonexempt memorandum], there is no longer any need to protect the consultative process."); *United States v. Philip Morris USA Inc.*, 218 F.R.D. 312, 317 (D.D.C. 2003) ("[A]n agency employee is unlikely to be chilled by the fear that her advice will become public if it is adopted.").  Because the redacted material identified above was released in identical form in the final letter, the deliberative process privilege does not apply.  The Court orders defendant to release the content of these redactions to plaintiff.[2]

### 2.  *Proper Redactions*

The Court finds that the remaining redactions—all those other than the three identified above—were proper.  After an *in camera* review, the Court finds that the redacted material relates

---

[2] Plaintiff has asked the Court to review *in camera Vaughn* Index Items 3 and 27.  Pl.'s Opp'n to Def.'s Mot. to Dismiss 20–21, 27.  Item 28, portions of which defendant has withheld under the deliberative process privilege, is also a draft letter to DVP regarding the Fort Monroe termination settlement proposal, dated February 24, 2015.  To the extent that any redacted material in Item 28 appears in identical form in the final letter, defendant is ordered to produce that material in accordance with the above reasoning.

to the Air Force's discussions and decisions regarding DVP's settlement proposal for the closure of Fort Monroe and termination of CLIN0007. This information relates generally to recoverable costs, cost estimates and breakdowns, settlement term, and the reasoning behind these decisions.

The Court concludes that the redactions described above were proper under Exemption 5 because the information redacted from the drafts was both predecisional and deliberative. First, the drafts are predecisional; they were prepared in the process of assisting the Air Force in coming to a decision regarding DVP's settlement proposal. *See Formaldehyde Inst.*, 889 F.2d at 1122. They were written after the contract termination but before the Air Force came to its final conclusion regarding DVP's settlement proposal, which it released on March 7, 2014. *Cf. Murphy v. Tenn. Valley Auth.*, 571 F. Supp. 502, 505 (D.D.C. 1983). In contrast to the documents in *Coastal States Gas Corp.*, which "discus[ed] established policies and decisions the agency regulations in the light of a specific, and often hypothetical, fact pattern," and therefore "[n]o 'decision' [was] being made or 'policy' being considered," 617 F.2d at 868, the redacted material here relates directly to the Air Force's decision regarding DVP's settlement proposal, and it was not included in the final memorandum letter. The information redacted was "directed at a very specific decision," the decision to whether to accept DVP's settlement proposal. *See Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 575 F.2d 932, 935 (D.C. Cir. 1978) (finding that Exemption 5 applied to cost comparisons and feasibility opinions regarding the Air Force's decision of whether to accept the plaintiff's proposal to use its computerized system).

The drafts are also deliberative in nature. They reflect the Air Force's decisionmaking process with regard to DVP's settlement proposal. *See Formaldehyde Inst.*, 889 F.2d at 1122; *Giovanetti v. F.B.I.*, No. CV 13-1807, 2016 WL 1273177, at *4 (D.D.C. Mar. 31, 2016) ("[T]he documents contain information reflecting the internal deliberations of the agency in preparing

'documents ultimately filed with the court.'"); *Life Extension Found., Inc. v. I.R.S.*, 915 F. Supp. 2d 174, 183 (D.D.C. 2013), *aff'd*, 559 F. App'x 3 (D.C. Cir. 2014) (finding that the exempt documents "were generated as part of a continuous process of agency decision-making, namely what determination the IRS should make with regard to plaintiff's tax-exempt status"). The information redacted does not merely consist of declarations of existing policy. *See Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 876 (D.C. Cir. 2010) ("A document that does nothing more than explain an existing policy cannot be considered deliberative."). Rather, the material was deleted or changed and was and not included in the final version of the letter. These "omission[s] reveal[] an agency deliberative process: for some reason, the agency decided not to rely on [those] fact[s] or argument[s] after having been invited to do so." *Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983) (internal quotation marks omitted). In addition, material in draft agency documents that has undergone stylistic changes prior to release of the final document may qualify for redaction under Exemption 5.[3] Changes to wording that give insight into the agency's decisionmaking process and discourage candid discussion may be deliberative in nature. *See Russell*, 682 F.2d at 1048 ("[T]he exemption protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency."). The Court finds that disclosure of the redacted material here would "discourage candid discussion within the agency." *Formaldehyde Inst.*, 889 F.2d at 1122.

Other members of this Court have considered similar factual situations, and have found that Exemption 5 applies. In *Fischer v. U.S. Department of Justice*, the plaintiff sought records

---

[3] The Court notes that this, like many deliberative process privilege issues, is a fact intensive question based on the documents and circumstances at hand. *See Coastal States Gas Corp.*, 617 F.2d at 866 ("The cases in this area are of limited help to us, because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.").

related to his criminal conviction for the purpose of helping him prove his innocence. *Fischer v. U.S. Dep't of Justice*, 723 F. Supp. 2d 104, 106 (D.D.C. 2010). The defendant asserted Exemption 5 with respect to two drafts of a settlement agreement prepared for internal purposes, but produced partially redacted versions. *Id.* at 113–14. Citing the defendant's declarations, the court concluded that documents were properly withheld:

> They were part of the government's negotiations and preparations for a final settlement agreement, and as a result of their advisory nature their release could affect employees' candor with their colleagues on similar matters in the future. The drafts originated from a government agency—the U.S. Attorney's Office. They are predecisional because, as proposed terms for a document which the government would later sign, they had a concrete role within a decision-making process. Finally, the redacted terms composed advice and not facts, thus constituting deliberative material.

*Id.* at 114 (internal citations omitted).

Similarly, In *Murphy v. Tennessee Valley Authority*, TVA contracted with Zurn Industries for the construction of cooling towers at two nuclear power plants. *Murphy*, 571 F. Supp. at 504. After TVA decided to defer construction, it negotiated and reached a final contract settlement with Zurn. *Id.* The plaintiff filed a FOIA request in part seeking documents relating to TVA's negotiations and settlement with Zurn, several of which were withheld under Exemption 5. *See id.* The documents at issue were written by staff members who were "involved in resolving Zurn's contract claims but did not themselves have authority to settle them." *Id.* at 505. The court, holding that Exemption 5 applied, found that the documents were predecisional as "they were written after TVA decided to wind down its cooling tower projects but before the Board voted to approve the $17.5 million settlement recommendation," and deliberative because they "contain[ed] staff evaluations, recommendations, proposals, and suggestions concerning the Zurn settlement process." *Id.* at 505.

Furthermore, despite plaintiff's argument that Exemption 5 was improperly used to withhold factual information such as calculations and estimates regarding termination costs,[4] the Court finds that any factual information redacted was "inextricably intertwined" with deliberative material. *See Judicial Watch, Inc.*, 432 F.3d at 372. Not only was this information not included in the final agency letter, any calculations or estimates were used in the Air Force's decision regarding whether to accept DVP's settlement proposal and its own calculation of settlement amount owed to DVP. The D.C. Circuit has considered, albeit in a different context, whether cost estimates qualify for redaction as part of the deliberative process. In *Quarles v. Department of Navy*, the court considered whether the deliberative process privilege applied "to certain cost estimates prepared by Navy officials in the course of the Navy's selecting homeports for ships in a new battleship group." *Quarles v. Dep't of Navy*, 893 F.2d 390, 391 (D.C. Cir. 1990). Finding that "[n]umbers have a surface precision that may lead the unsophisticated to think of them as fixed," the cost estimates at issue "derive[d] from a complex set of judgments—projecting needs, studying prior endeavors and assessing possible suppliers. They partake of just that elasticity that has persuaded courts to provide shelter for opinions generally." *Id.* at 392–93. Finding that harm to the decisionmaking process would occur if the cost estimates were disclosed, the court concluded that "high officials might be inclined either not to call for cost estimates, or to call only for fuzzy ones expressed as wide ranges." *Id.* at 393.

This Court is persuaded that disclosure of any cost estimates redacted from the materials here would also expose the deliberative process with respect to Air Force's consideration of DVP's termination settlement proposal. *Cf. Brinderson Constructors, Inc. v. U.S. Army Corps of*

---

[4] The Court notes that is unclear from plaintiff's briefs whether it claims that factual information was improperly redacted from *Vaughn* Index Items 3, 27, and 28 specifically. Plaintiff argues generally that the government's calculations and estimates regarding its termination costs is factual and not exempt as deliberative process. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss 18–19, Pl.'s Reply Br. 12–13.

*Engineers*, No. CIV. A. 85-0905, 1986 WL 293230, at *5 (D.D.C. June 11, 1986) (finding, in the context of documents containing information regarding the plaintiff's claims for compensation for work performed for the defendant that "the factual material withheld, namely the computations and other data, is also exempt from disclosure as it pertains to the merits of plaintiff's claim for additional compensation" and "[i]t is well-settled that such computations are certainly part of the deliberative process").  This Court therefore concludes that the deliberative process privilege of Exemption 5 applies to the redactions described above.

Finally, the Court finds that all reasonably segregable portions of the materials were produced to plaintiff.  As noted above, all documents were produced in full except *Vaughn* Index Items 3, 27, and 28.  Based on the above-described *in camera* review, the large majority of the redacted material was properly withheld under Exemption 5.  The Court has identified the material improperly withheld and has ordered defendant to release this material.  Therefore, all non-exempt portions of the documents either have been produced or will be produced upon execution of this Court's Order.  *See Trans-Pac. Policing Agreement*, 177 F.3d at 1026–27.

### C.      2015 DCAA Audit Report

Plaintiff specifically asks this Court to order the release of the September 30, 2015 DCAA Audit Report, arguing that the Air Force is blocking the production of a responsive, non-exempt document.  Pl.'s Reply Br. 5–6.  While "[t]he clear purpose of the FOIA is to assure that the public has access to all government documents, subject to only nine specific limitations, to be narrowly interpreted," *Coastal States Gas Corp.*, 617 F.2d at 862, the document at issue here simply is not responsive to plaintiff's FOIA request.  Plaintiff's FOIA request specified a date range of January 1, 2009 to March 25, 2014.  Compl. ¶ 15.  The record at issue was created on September 30, 2015, plainly outside this date range.  Second Lyon Decl. ¶ 4.  DCAA and Air Force consider the

document to be an Air Force record.  *Id.*  If plaintiff wants the Air Force to produce this record, its remedy is to file a new FOIA request for the document, with the proper date range.

### D.      Plaintiff's APA Claim

Count II of plaintiff's Complaint is brought under the Administrative Procedure Act ("APA") for an agency action unlawfully withheld and unreasonably delayed.  Compl. ¶¶ 57–61. Under the APA, judicial review exists for an agency action only when "there is no other adequate remedy in a court."  5 U.S.C. § 704.  As defendant correctly notes, FOIA provides a remedial scheme which confers jurisdiction on the District Courts of the United States to "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).  Because plaintiff here seeks relief in the form of an order to disclose the requested records and an injunction preventing the defendant from withholding or redacting the requested records, Compl. Prayer for Relief ¶¶ B–C, the Court declines to exercise jurisdiction over plaintiff's APA claim.  *See e.g.*, *Feinman v. F.B.I.*, 713 F. Supp. 2d 70, 76 (D.D.C. 2010) ("This Court and others have uniformly declined jurisdiction over APA claims that sought remedies made available by FOIA.").  The Court therefore will dismiss Count II of plaintiff's Complaint.

## V.      CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED as to Count II of plaintiff's Complaint.  The Court finds that defendant conducted an adequate search.  Defendant's motion for summary judgment is therefore GRANTED as to the adequacy of the search, and plaintiff's cross motion for summary judgment as to the adequacy of the search is DENIED.  The Court finds that defendant improperly redacted certain information from *Vaughn* Index Items 3 and 27.  Therefore, as to the propriety of Exemption 5, defendant's motion for summary judgment

is GRANTED in part and DENIED in part, and plaintiff's cross motion for summary judgment is GRANTED in part and DENIED in part.   A separate Order accompanies this Memorandum Opinion.

Date: September 20, 2016

Royce C. Lamberth
United States District Judge